## Oldham *vs* Sale *et al.*

### ERROR TO THE LOUISVILLE CHANCERY COURT.

*Dower. Parol contracts. Femes covert. Void and voidable contracts.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

SOME time in the year 1803 or 1804, *Richard Oldham,* then about seventeen or eighteen years of age, being entitled to one undivided third part of lot No. 13, in the' town (now city) of Louisville, owned jointly by himself and his brother, *John P. Oldham,* and sister, *Abigail Churchill,* made a verbal sale of his interest therein to *Samuel Churchill,* his brother-in-law, for the price of £50 then paid to him; and shortly after his marriage with the plaintiff in error, that is, in the year 1809, after he had attained majority, he and his said wife, she then being in her minority, made to the said *S. Churchill* a conveyance of his legal interest in the said lot—the deed reciting and confirming his former unwritten sale.

In 1805, *Samuel Churchill,* considering himself and wife entitled to two-thirds of the lot, sold that interest to *Wm. C. Galt,* who thereupon took possession thereof, and to whom (*John P. Oldham* having also sold his third to him,) the said Churchill and wife, in 1817, conveyed their two-thirds.

*Galt,* and those claiming under him, having occupied the lot ever since the year 1805, the widow of *Richard Oldham,* who died in the year 1837, shortly after his death, to-wit: in November, 1837, filed a bill in chancery against the proprietors of the *Galt House,* which had been previously built on the said lot No. 13, asserting a claim to *dower* therein, on three grounds—1st. Because, being a minor when she acknowledged the conveyance to *Churchill,* her acknowledgment was voidable. 2dly. Because, as she insisted, her husband being also an infant when he made the verbal sale, his confirmation of that voidable contract, after their intermarriage, did not pre-

clude her from avoiding it so far as her legal right to dower is concerned. 3dly, Because, as she also insists, she has still the right to avoid the verbal sale by relying on the statute of frauds and perjuries, her initiate right to dower not being divested by her husband's confirmation of that sale after she had become his wife.

The Circuit Court having dismissed her bill she prosecutes this writ of error.

If Mrs. Oldham could ever have avoided her acknowledgment, made before and properly certified by the clerk of Jefferson, she did not come too late with her bill in this case, because it was filed within only a few months after she ceased to labor under the disability of coverture.

Nor are we permitted to doubt her right of avoidance on the ground of her own infancy. This right was first recognized by this Court in the case of *Philips* vs *Green*, 3 *Mar.* 7, and was sanctioned and confirmed by the subsequent case of *Prewit* vs *Graves et al.* (5 *J. J. Mar.* 120,) and had there been no such judicial recognition, we should be clearly of the opinion that such an acknowledgment, by an infant *feme covert,* may be avoided by her in consequence of her infancy, for it being well settled, as decided in *Milner* vs *Turner's heirs,* (4 *Mon.* 245,) that the acknowledgment of a deed before a clerk is a ministerial act *in pais,* and therefore may be avoided by a *male* cognisor who labored under no other disability than that of infancy, there could be no good reason for denying the same just privilege to a *female,* to whose *infancy* the disability of *coverture* was also superaded; and the statute of conveyancing of 1785, followed in this respect by all subsequent enactments on the same subject, declares that a *feme's* acknowledgment shall be (only) as effectual *as it would have been had she been sole.*

But notwithstanding Mrs. *Oldham's* right to avoid her relinquishment of dower, we are of the opinion that she has no equitable right to the dower as sought by her bill; for it is well settled that, in this state, a surviving widow is not equitably entitled to dower in any estate of which her husband was not beneficially seized during her cover-

OLDHAM
*vs*
SALE *et al.*

Decision of the Chancellor.

A relinquishment of dower by a *feme covert,* infant, is an act *in pais,* and may be avoided on arrival at full age.

The acknowledgment of *femes covert* is entitled to no higher consideration than if made by a *feme sole.*

Widow is not entitled to dower in lands of which the husband was not beneficially seized during the coverture—If there be a sale by a parol execu-

Oldham
*vs*
Sale *et al.*

tory contract of
sale of land, by
husband during
infancy & before
marriage, *&* after
marriage, at full
age, such sale
be confirmed by
a conveyance,
the widow is not
entitled to dow-
er.

ture; and we are of the opinion that, the verbal sale by *Richard Oldham* not being void but voidable only, he alone had a right to avoid or confirm it during his life, and having confirmed it by the conveyance of 1809, his wife never had any equitable interest of which she could not have been divested without her own concurrence.

The infancy of *Richard Oldham,* when he first sold his interest to *Churchill,* did not render that executory agreement void, but voidable only. Nor did the want of a written memorial of that contract have any other effect under the established construction of the statute for preventing frauds and perjuries, which only provides that no such unwritten agreement for the sale of land shall be enforced by suit, but leaves all such agreements, in all other respects, as effectual as if no such enactment had ever been made. And as a corollary of the doctrine that a verbal contract for the sale of land is not void, and that the only effect of the statute is that such an agreement cannot be enforced *in invitum* against either party by suit, courts have determined that there may even be a decree for the specific execution of it, unless the complainant shall have alleged that it was unwritten, or unless the defendant, by either denying the sale or pleading the statute, shall have squeezed out the fact that there was no such memorial in writing, as that prescribed by law, and have also decided that a court of equity will not help either party to avoid such a contract, if the other party had, in good faith, performed or be able and willing to perform his undertaking, and had been guilty of no injurious or unreasonable delinquency, and also that a conveyance made in execution of a verbal sale of land will, in equity, overreach and render unavailing an intermediate executory sale to a stranger, though evidenced by writing. These doctrines are so well settled and understood as to render either argument or reference to adjudged cases in support of them, not only superfluous but ostentatious, and therefore unjudicial.

Parol executory
contracts for land
are not void, but
voidable only.

Consequently, as the verbal sale by *Oldham* was valid until avoided, the fact that there was no written memorial of it, had no other effect on it than the other fact of his infancy at the date of it, and which only furnished

ground for avoiding it if he elected to do so before a con-
firmation of it.

Then, considering this case, just as it should be con-
sidered, had *Mrs. Oldham* never united with her hus-
band in the conveyance of 1809, the simple question is,
whether she can now, in a court of conscience, avoid
the executory sale made by him before their intermar-
riage, notwithstanding his confirmation of it by deed ex-
ecuted during the subsistence of the marriage; and, as
already intimated, we are of the opinion that she cannot
do so.

Her potential right to dower was, at the date of that
conveyance, not only purely technical but initiate only;
and springing, as it did, from his title, and depending
thereon as a mere contingent incident, it can never have
become consummate and available, because, when she
married him, another person was beneficially seized of
the lot, under a contract which, though voidable by him,
he was under no sort of obligation to her to avoid, but
had a clear right to confirm and was morally bound to
effectuate in good faith. Her marital interests were sub-
ject to his election on that subject. She had no right to
require him to avoid his contract, nor could she avoid it
for him or for herself. And, in this respect, he has been
only passive by letting that stand which ought to have
stood, and ratifying that which he had, for a valuable
consideration, long received and enjoyed, imperfectly
done before she became his wife. He has done noth-
ing which he had not a perfect right to do, or which she
had any authority to gainsay or defeat.

And therefore, as he, in good faith, only executed
after his marriage, an anti-nuptial contract, transferring
his beneficial interest in the lot, and which contract he
could not either honorably or justly have avoided, his
deed of conveyance had relation to the date of that ex-
ecutory agreement and overreached or rather extinguished
her initiate right to dower.

Had her husband given a sufficient bond for a con-
veyance whilst he was an infant, and before his mar-
riage, and which he afterwards fulfilled by the deed after
marriage, surely she could not successfully assert an

Widów cannot
avoid a parol ex-
ecutory contract
for land made by
the husband in
infancy, where
husband, when
of full age during
coverture, con-
firm the contract
and execute a
conveyance—
Such deed of con-
veyance, made
by the husband
after marriage,
confirmatory of
the parol con-

tract of sale
made before mar-
riage and during
infancy will have
relation back to
the date of the
executory agree-
ment, and over-
reach the initiate
right of the wife
to dower.
</div>

equitable claim to dower merely because, as in this case, on some technical ground, *he might* have avoided a specific execution. That case and this are parallel in principle.

But were we not sustained by principle, to the full extent of this conclusion, still, we could not, we apprehend, hazard any thing in affirming that a court of equity should never, under such circumstances as those characterizing this case, if indeed under any that could exist, aid a widow to avoid such a fair contract of her husband, confirmed by himself for a valuable consideration. His contract having been confirmed by himself, as it ought to have been, *a court of equity* will not help her now to avoid its full effect by pleading his infancy or the statute of frauds and perjuries, which he had elected to waive. This is an obvious deduction from well established principles, sanctioned by undeviating practice in analagous cases.

Wherefore, the decree of the chancellor is approved and affirmed.

*Owsley and Wheatley* for plaintiff; *Crittenden* for defendants.

