## NEWPORT COUNTY.

SARAH J. CHAMPLIN vs. JOHN P. CHAMPLIN.

The rule which prohibits conveyances of property by a woman in fraud of the marital rights of her intended husband applies, also, to prohibit conveyances by a man which defeat the dower right of his intended wife. But the rule is not absolute, and generally dower is subject to all legal or equitable incumbrances which existed before it attached.

Hence when a father, for valuable consideration in services rendered by his son of full age, promised to convey realty to the son, who on the faith of the promise, after receiving possession, occupied the realty, cultivated it, and made large expenditures on it, and afterwards received a deed of the realty from his father, executed but a few hours before the father's second marriage, and without the knowledge of the bride :

*Held*, that dower did not attach to the realty so conveyed to the son.

BILL IN EQUITY for dower.

*William P. Sheffield & William P. Sheffield, Jun.*, for complainant, cited *Countess of Strathmore* v. *Bowes*, 1 Ves. Jun. 22 ; *Thayer* v. *Thayer*, 14 Vt. 107 ; 39 Amer. Decis. 211, and note ; *Mertins* v. *Bennett*, Bunbury, 336 ; *Swaine* v. *Perine*, 5 Johns.

Ch. 482; *City* v. *City*, 2 Lev. 130; *Cranson* v. *Cranson*, 4 Mich. 230; *Killinger* v. *Reidenhaur, Adm'r*, 6 Serg. & R. 534; *Hall* v. *Carmichael*, 8 Baxter, Tenn. 211; *Jenny* v. *Jenny*, 24 Vt. 324; *Brewer* v. *Connell*, 11 Humph. Tenn. 500; *Doe dem. Caillaret* v. *Bernard*, 15 Miss. 319; *Thompson* v. *Thompson*, 1 Jones Law, N. Car. 430; *Link* v. *Edmondson*, 19 Mo. 487; *Petty* v. *Petty*, 4 B. Mon. 215, 217; *Stewart's Lessee* v. *Stewart*, 3 J. J. Mar. 48; *Ingram* v. *Morrison*, 4 Harring. Del. 111; 1 Scribner on Dower, 585.

*Francis B. Peckham & Christopher E. Champlin*, for respondent.

*Providence, July* 17, 1888. DURFEE, C. J. The complainant is the widow of Christopher E. Champlin, late of Block Island, deceased. She brings this suit for dower in an estate which he conveyed to his son, the defendant John P. Champlin, a few hours before their marriage, her claim being that the conveyance was a fraud upon her right. The marriage took place September 29, 1873, at four o'clock in the afternoon; the conveyance was made between ten and eleven o'clock in the morning. She did not know of it until after the marriage. The defence is that the conveyance was made in fulfilment of a promise given long before, and under circumstances which rebut any inference of fraud.

The circumstances were these. At the time of the marriage Christopher E. Champlin was sixty six years old; his wife was twenty six. He was the father of six children by a former wife. In 1852 he had a fall causing a severe spinal injury. He was then the owner of two farms, to wit: his homestead farm, and the Black Rock farm, so called, being the estate in which the complainant now sues for dower, and half owner of a third farm, and was also improving land which belonged to his wife. At the time of the accident the defendant was a boy about fourteen years old, going to school. His father took him from the school and put him to work upon the land. The father never recovered from his injury so as to be able to do anything but the lightest work, and the son was never permitted to return to his school. He worked, according to his own testimony, continuously until he was twenty four years old, taking the principal charge, and receiving nothing but his board, lodging, and clothing. He testifies that his father

always told him that the land should be his. In 1862 he took the homestead farm on shares, doing all the work and furnishing the manure under this understanding with his father. His mother died, leaving a will by which she devised her land to a daughter. He testifies that his father expressed dissatisfaction with the will, and then told him he could have Black Rock farm ; to take possession of it, and he would give him a deed ; that he took possession, made changes and improvements, tearing down and moving buildings and erecting new ones, his father suggesting or encouraging, also building walls, carting great quantities of seaweed, employing labor, and so incurring heavy expenses. He stocked the farm soon after taking possession of it, and paid his proportionate part of the taxes. The title deeds of Black Rock farm were left with him by his father in 1872. In February, 1873, he returned to his father's house and remained there until the marriage, performing the personal services which his father's age and infirmities demanded. Other witnesses testified to declarations by the father that he meant to pay the defendant for his services or to give him Black Rock farm. The deed was made, reserving to the father a life estate at his request, and was immediately lodged for record. The question is whether, in view of these circumstances, the conveyance can be regarded as a fraud upon the marital right of the complainant.

There are cases which hold that a man, pending an engagement of marriage, and at any time prior to the marriage, has the right to convey his real estate away without the knowledge of his wife, and even for the purpose of defeating her dower, and that the rule which entitles him to treat such a conveyance by the woman as a fraud on his marital right does not apply as against him in her favor. The weight of American authority treats both alike, and we see no reason why they should not be so treated. The rule, however, is not absolute. It does not entitle the wife to treat every conveyance made by her husband secretly on the eve of marriage as a fraud on her right. There may be good reasons for the conveyance. It may be the husband's duty to make it. The general doctrine is that the dower right is subject to every lien or incumbrance at law or in equity existing before it attaches. In accordance with this doctrine, it has been frequently decided that such a

conveyance, made for the purpose of carrying out a previous valid contract of sale, is good against a claim of dower. The right of dower, it has been said. arises only on the title of the husband, and cannot be higher or more extensive. In *Firestone* v. *Firestone*, 2 Ohio St. 415, the husband before marriage agreed, for considerations partly good and partly valuable, to convey land to his son, who paid the valuable consideration and took possession, and it was held, under a conveyance to the son after marriage, that no right of dower attached as against his equity. In *Oldham* v. *Sale*, 1 B. Mon. 76, the contract was oral and the vendor an infant, but the vendee having paid the price, it was held that his conveyance at full age, after marriage, was effectual to exclude the widow's right of dower, " because," say the court, " when she married him another person was beneficially seized of the lot under a contract which, though voidable by him, he was under no sort of obligation to her to avoid, but had a clear right to confirm, and was morally bound to effectuate in good faith." In *Gaines* v. *Gaines,* 9 B. Mon. 295, 298, the court expressed the opinion that the principle would likewise apply " to a *bonâ fide* gift made before coverture to a child by a former marriage, who takes possession and improves the land under the gift, claiming it as his own before the coverture, and receives a conveyance from the husband afterwards." And see *Littleton* v. *Littleton,* 1 Dev. & B. 327, 331 ; *McIntosh* v. *Ladd,* 1 Humph. 459 ; *Miller et al.* v. *Wilson et al.* 15 Ohio, 108 ; 1 Scribner on Dower, 591–595 ; *Thayer* v. *Thayer,* 14 Vt. 107 ; 39 Amer. Decis. 211 and note.

We think that in the case at bar the circumstances clearly rebut any inference that the services rendered by the defendant, after he came of age, were regarded by either him or his father as gratuitous. We have no doubt that if the father had died before giving him possession of Black Rock farm, or making the conveyance, a jury, on an action by him against his father's estate for compensation, would have rendered, and rightly, a verdict in his favor. There was then, when the father put the son in possession of the farm, agreeing to give him a deed of it, a valuable consideration for the agreement ; and when the son, relying on the agreement, entered into possession and made what was for him large expenditures for improvements, it became in the highest degree equitable

and just for the father to keep faith with him by carrying his agreement into effect. Indeed, we have no doubt that, if he had refused, the son could have maintained a suit against him for specific performance, though, according to *Oldham* v. *Sale, supra,* it is not necessary that such a suit should be maintainable to justify the conveyance. The only reprehensible feature which we find in the transaction is the non-disclosure of it to the complainant before the marriage ; but we are of opinion that, in the circumstances, this is insufficient to entitle her to dower on the ground that the conveyance was a fraud upon her right.