## WILSON v. WILSON et al.

No. 1804. Decided March 25, 1907 (89 Pac. 443).

1. DEEDS.— DELIVERY — SUFFICIENCY. Where a grantor directed the conveyancer to deliver the deeds to one of the grantees, and they were so delivered, in the grantor's presence, without condition or reservation, the character of the delivery was not affected by the fact that the deeds were afterwards kept where the grantor had access to them.

2. SAME — DELIVERY TO THIRD PERSON. Where a grantor delivers a deed to a third person, absolutely as his deed, without reservation, and without intending to reserve any control over the instrument, though it is not to be delivered to the grantee until the grantor's death, the deed, when delivered, is valid and takes effect from the first delivery.

3. DOWER — CONVEYANCES BEFORE MARRIAGE IN FRAUD OF WIFE. A voluntary conveyance by either party to a marriage contract of his or her real property made without the knowledge of the other, and on the eve of the marriage, is a fraud upon the marital rights of such other, and will be treated as void as against the party surprised.

4. SAME — PRIORITIES. The wife's dower right is subject to every lien or incumbrance at law or in equity existing before it attaches.

5. SAME — ESTATE OR INTEREST OF HUSBAND. A wife cannot complain of a conveyance of land made by her husband without her knowledge upon the eve of marriage, and in contemplation of it, where he held the land as a mere trustee for his sons.

APPEAL from District Court, First District; W. W. Maughan, Judge.

Action by Catherine D. Evans Wilson against Robert K. Wilson, Jr., and others. From a judgment for plaintiff, both parties appeal.

AFFIRMED ON PLAINTIFF'S APPEAL. REVERSED ON DEFENDANT'S APPEAL.

*John A. Street* and *W. H. Bramel* for plaintiffs.

*C. C. Richards* and *J. D. Call* for defendant.

### APPELLANT'S POINTS.

A man about to marry a second time may lawfully convey to his children by a former marriage a reasonable portion of his property. No other consideration than love and affection and natural duty is required to support the deed. (*Kinne v. Webb,* 54 Fed. 34; *Hamilton v. Smith* [Ia.], 10 N. W. 276.)

But what of a case where, in addition to love and duty, there is a valid, valuable consideration practically amounting to ownership of the property? The exact situation is presented in *Champlin v. Champlin,* 16 R. I. 314, 15 Atl. 85. (*Firestone v. Firestone,* 2 Ohio St. 415; *Chapman v. Chapman,* 24 S. E. 225 [Va.]; *Doniher v. Doniher,* 66 N. E. 239 [Ill.]; *Beckwith v. Beckwith,* 28 N. W. 116 [Mich.]; *Gaines v. Gaines,* 9 B. Mon. 295, 298; *Littleton v. Littleton,* 1 Dev. & B. 327, 331; *McIntosh v. Ladd,* 1 *Humph.* 459; *Miller v. Wilson,* 15 Ohio 108; 1 Scrib. Dower, 591-595; *Thayer v. Thayer,* 14 Vt. 107; 39 Amer. Dec. 211 and note.)

Such being the law, it is immaterial whether she had notice or no notice of a deed or conveyance based on a valid consideration or obligation. (*Blood v. Blood,* 40 Mass. [23 Pick.] 80; *Richardson v. Skapfield,* 45 Me. 386; *Black v. Hoyt,* 33 Ohio State 203; 14 Cyc., pp. 911-912 and notes.)

### RESPONDENT'S POINTS.

The case of *Hayes v. Boylan,* 141 Ill. 400, 30 N. E. 1041, 1042, is very similar to the one at bar. It is a case where a father who had executed a deed to his adult children, handed it to one of them, telling him to put it in a box in the bank, used by both father and son for keeping valuable papers, and the son did so. The father retained possession of the land conveyed until his death. Held that the deed was

inoperative for want of delivery. (*Bovee v. Hinde*, 135 Ill. 137, 25 N. E. 694; *Jordan v. Davis*, 108 Ill. 336; *Cline v. Jones*, 111 Ill. 563; *Byers v. Spencer*, 101 Ill. 429; 13 Cyc. 562 and notes 94, 95. 9 Am & Eng. Enc. Law, 154-155.)

"No special form or ceremony is necessary to constitute a sufficient delivery. It may be by acts or words, or both; but something must be said or done showing an intention that the deed shall become operative to pass the title, and that the grantor loses all right of control over it. The delivery need not necessarily be made to the grantee, but may be made to another in his behalf and for his use; but it is indispensable that the grantor shall part with control over the deed, and shall not retain a right to reclaim it. (*Hayes v. Boylan*, 141 Ill. 400, 30 N. E. 1041; *Provart v. Harris*, 150 Ill. 40, 36 N. E. 958; *Wilson v. Wilson*, 158 Ill. 567, 41 N. E. 1007; *Shults v. Shults*, 159 Ill. 654, 43 N. E. 800; *Hawes v. Hawes*, 177 Ill. 409, 53 N. E. 80; *Stephens v. Ins. Society*, 16 Utah 22; *Nelson v. Nebo Co.*, 25 Utah 37; 6 Enc. of Ev. p. 155, also note under "Rule stated" p. 156; *Bank v. McDonald* [Ala.], 9 L. R. A. 646; *People v. Brotherton*, 47 Cal. 400; *Place v. Minster*, 65 N. Y. 105; *Benjamin v. McElwaine*, Richards Co. [Ind.], 37 N. E. 363; *Tucker v. Finch* [Wis.], 27 N. W. 817, 1 Jones on Ev., sec. 246.)

The common fraudulent design may be shown by subsequent participation in the fraud and its fruits, with a knowledge of the facts; and where there is proof of the common design to defraud, the declarations of one participant are admissible against the other, although made in his absence. (*Lincoln v. Claflin*, 74 U. S. 139, Book 19 Law Ed. 106; Rose's Notes on page 943 (inside page). *Wiborg v. United States*, 163 U. S. 656, Book 41: 298; *People v. Hampton*, 4 Utah 258; *Snow v. Rich*, 22 Utah 131.)

The husband can make no disposition of his property by deed or will that would deprive his wife of this statutory interest. It is an interest which she acquired by reason of her marriage with her husband, and an interest which the law should protect. (*Smith v. Smith*, 22 Colo. 480, 46 Pac. 129, 130; *Manikee v. Beard*, 85 Ky. 20, 2 S. W. 546; *Smith v.*

*Smith,* 12 Cal. 226; *Peck v. Brummagin,* 31 Cal. 447; *De Godey v. De Godey,* 39 Cal. 164; *Tucker v. Andrews,* 13 Me. 128; *Young v. Carter,* 10 Hun 196-201; 14 Am. & Eng. Enc. of Law [2nd Ed.], 252.)

STRAUP, J.

This action was brought by the respondent and cross-appellant to have declared void certain conveyances of various parcels of land, so far as affecting her rights therein as the widow of R. K. Wilson, deceased. The realty consists of residence and business properties in Brigham City, and farm, meadow, and orchard lands near by. The conveyances are referred to in the record as Exhibits A, B, C, D, E, F, G, H, and I. The respondent was the second wife of the deceased. The defendants and appellants are his sons, who at the time of the conveyances were from twenty-seven to forty-two years of age, and nearly all of whom were married and had families. The first wife of the deceased, Agnes Wilson, died September 1, 1899. The defendants are children by the first wife. The deceased married the respondent November 10, 1900. He was then seventy years of age as testified to by respondent, and seventy-seven years of age as testified to by his sons. The respondent was fifty-five. The deceased died intestate February 27, 1902. In January, 1899, the deceased and his first wife, Agnes Wilson, conveyed to the appellants the realty described in the Exhibits A, B, C, D, E, and F; and in August, 1899, the realty described in Exhibit G. The realty A and B was business property on which the deceased and his sons carried on a saloon business under the firm name of R. K. Wilson & Sons. G was the residence property of the deceased and his wife. The legal title to A, B, and G was in the name of Agnes Wilson. G is a lot adjoining the residence property. D is twenty-five acres of pasture land. E is farm land, and F meadow land. The legal title to C, D, E, and F was in the name of the deceased. H and I were conveyances of orchard lands made by the deceased to his sons Robert and Charles November 8, 1900, after the death of his first wife

and two days before his marriage with the respondent. Respondent's action sought to have declared a widow's interest in all these lands. Her claim is based on allegations that, while the legal title to A, B, and G was in Agnes Wilson, nevertheless R. K. Wilson, deceased, was the equitable owner of those properties; that there was no sufficient delivery in 1899 of any of the deeds A, B, C, D, E, F, and G to pass title; that the deeds were unrecorded until two days before her marriage, and that she had no knowledge of their existence until after her marriage; and that on the eve of the marriage the deceased and the defendants entered into a conspiracy to defraud her of her marital rights, and in pursuance thereof effected a complete delivery of the deeds A, B, C, D, E, F, and G, and caused the execution and delivery of the deeds H and I for the same fraudulent purpose. Upon findings made by the trial court judgment was rendered in favor of respondent awarding her a widow's interest in fee to all the realty except A, B, and G. From this judgment both parties have appealed; the defendants contending that respondent is entitled to no interest in any of the lands, and the respondent contending that she is entitled not only to what the court awarded her, but also to an interest in A, B, and G.

Holding, as we do, that there was a sufficient delivery of deeds A, B, C, D, E, F, and G at the time of their execution in 1899 to pass title, it is not necessary to determine whether the equitable title to A, B, and G was or was not in R. K. Wilson, deceased. The deeds having then been delivered, the deceased divested himself of all title possessed by him, both legal and equitable. The evidence, without conflict, substantially shows the following facts: The defendants before and after they attained their majority worked in common with their father, and through their labors and services for many years aided in the accumulation of the properties. Some of them worked and assisted about the saloon business; some of them worked on and looked after the farm; others looked after and attended to the cattle and stock business in which they were all jointly interested and engaged.

A joint bank account was kept by them under the firm name of R. K. Wilson & Sons. The proceeds of the farm and stock business were all turned over to R. K. Wilson, deceased, or to Peter Wilson, and were placed and kept with the saloon account. Some of the defendants also contributed cash to the general fund; Peter contributing $5,000 which was obtained by him from the sale of a mining claim. All worked together as one family, and all lived from the property. When money for necessaries or pleasure was needed, it was taken from the business. All proceeds were placed in the general fund and used in the business. The father was the head of the firm, and all business was transacted in the name of R. K. Wilson & Sons. Under this partnershiplike arrangement, or co-operative plan, the father and sons carried on the business and used the properties for many years without dividing earnings or proceeds, or accounting among themselves. For many years the father had declared to divers persons his intention of deeding the realty to his sons. About thirty or forty days before the deeds were made, he stated to the banker with whom they did business that he and his wife were getting old, and that he did not intend to bother with business, and that he was going to turn the property over to his sons, and that they would do the business with the bank from then on. "And from that time on," the banker testified, "they did the business with the bank." The conveyancer testified that the deeds were drawn at the request of the deceased, and that he went with the notary to the house where the deeds were signed and acknowledged by the deceased and his wife, Agnes. When the execution of the deeds was completed, the deceased handed them to the conveyancer and told him to deliver them to Peter. The deeds were thereupon, and on the same day, delivered to Peter in the presence of the deceased, without reservations or conditions of any kind. After the deeds were delivered Peter deposited them in a safety deposit box at the bank, where, also, other valuable papers were kept by R. K. Wilson & Sons. Peter had and retained possession of the key to the box. When absent for any length of time, he left it with his brother Robert. The

deeds, however, were not placed on record until two days before the marriage of the deceased and the respondent.  On the question of a delivery of the deeds, as above set forth, there is no substantial conflict in the evidence.  After these deeds were executed and delivered the deceased continued to occupy the residence until his death—first with his wife Agnes until her death, then with some of his sons and a daughter, and also with his second wife after the marriage with her. The deceased also continued to derive support and maintenance from the business as he had done theretofore. There is also evidence showing that he was about the saloon counseling and advising with his sons, and participating in business transactions. Other witnesses testify that, while he was about the saloon and the properties, he had retired from active business; that he did not participate in business transactions, and that the business was carried on and transacted by the sons. Robert K. Wilson, Jr., one of the defendants, testified that he often heard his father say that, when he got through with the property he was going to leave it to the boys, and that his understanding of that was that his father intended to use the property while he lived and at his death it was to go to the boys; that the making of the deeds was to carry out and put into effect that purpose and intention; that his father had access to the box at the bank; that, if he wanted the deeds, he could have gone to the box and taken them out; and that if his father had stated to the witness, or to Peter, that he was going to take the deeds, there would not have been any resistance.  But he does not testify, nor does any other witness in the case testify, when the deeds were executed and delivered by the deceased and his wife Agnes, that they were not delivered unconditionally, or that the deceased reserved any right whatever to recall or control them, or that he had any right to take them from the box, or that they were given to Peter to be there deposited and kept, or that they were there so deposited with the intention of giving the grantors a right to retain dominion or control of their custody.

We are cited to *Hayes v. Boylan,* 141 Ill. 400, 30 N. E.

1041, 33 Am. St. Rep. 326, as an authority showing a non-delivery of the deeds. We think that case distinguishable from the case at bar. There, after the deed had been executed, it remained with the grantor, who then gave it to one of the three grantees named in the deed, with directions to place it in a box in the bank which was used by both of them and where both kept papers. The court observed that no act was done by the grantor intended as a personal delivery of the deed; "for handing it to Charles Boylan, and at the same time telling him to 'take this deed and put it in our box in the bank,' was not a delivery to Charles, but it was a mere employing him as an agent of the grantor to do an act for him whereby he could retain the custody of the deed during his life." But how unlike that case is to this, where the grantor in unmistakable terms directed the conveyancer to deliver the deeds to Peter, one of the grantees, and where they were delivered to Peter in the presence of the grantor, without conditions or reservations of any kind, and where the deeds were placed in the box not at the suggestion or request of the grantor. Here, the placing of the deeds in the box was Peter's act, not the grantor's. After the deeds had been unconditionally delivered to Peter, they passed beyond the dominion and control of the grantors. After that Peter could have taken them home, deposited them in the bank box, or, for that matter, he could even have placed them in his father's private desk. When an absolute delivery had been made, the fact that Peter thereafter placed the deeds in the bank box to which the deceased had access, and in which the firm papers were kept, gave the grantor no authority to recall the deeds or to control their custody. If under such circumstances the deceased had taken the deeds, or if he even had destroyed them, he would not thereby have revested himself with title. The character of the delivery is not affected by the fact that the deeds after delivery were placed where the grantor equally with the grantee had access to them. (*Le Saulnier v. Loew,* 53 Wis. 207, 10 N. W. 145; *Rogers v. Rogers,* 53 *Wis.* 36, 10 N. W. 2, 40 Am. Rep. 756; *Reed v. Smith,* 125 Cal. 491, 58 Pac. 139.)

Nor is the fact that the deceased, after the delivery of the deeds, remained in possession of the residence, and was thereafter seen about the saloon participating in the conduct of the business, and aiding and advising his sons with respect thereto, repugnant to, or inconsistent with, under all the circumstances of the case, a delivery of the deeds and of divesting himself of title. The law is well settled that

"If a grantor delivers a deed to a third person absolutely as his deed, without reservation and without intending to reserve any control over the instrument, though this is not to be delivered to the grantee till the death of the grantor, the deed when delivered upon the grantor's death is valid, and takes effect from the first delivery. The deed in such case passes a present interest to be enjoyed in the future. If the grantor reserves control of the instrument, and it is subject during his life to revocation, no present estate passes to the grantee, and the deed is invalid for want of delivery." (2 Jones, Law of Real Property, section 1234; 9 Am. & Eng. Ency. Law, 157; 13 Cyc, 561, 565, 569.)

The finding that these deeds were not delivered until the 8th day of November, 1900, the date on which they were recorded, and two days prior to respondent's marriage, is not supported by the evidence. To the contrary, the evidence, without conflict, shows that they were executed and delivered by the deceased and his wife Agnes in January and August 1899, and at a time when the deceased and the defendants could not possibly have entertained any thought of a marriage between the deceased and the respondent, and therefore there is no basis for the contention that they were made in fraud of respondent's marital rights.

We now come to deeds H and I, which were executed by the deceased and delivered to the appellants R. K. Wilson, Jr., and Charles Wilson, and recorded, two days before respondent's marriage. Defendants strongly objected to their father's second marriage, and endeavored to persuade him not to marry the respondent. The contention of the respondent is not that these deeds were not absolutely delivered, but that the defendants and the deceased entered into a conspiracy to defraud her of her marital rights, and that

32 Utah—12

for such purpose and with such an intent these conveyances were made. She testified that the deceased before the marriage told her that he was a wealthy man, and was worth $40,000, and that she had no knowledge before the marriage of the existence of any of the deeds. The general rule, undoubtedly, is that a voluntary conveyance by either party to a marriage contract of his or her real property made without the knowledge of the other, and on the eve of the marriage, is a fraud upon the marital rights of such other, and that such a conveyance will be treated as fraudulent and void as against the party surprised, and his or her marital rights in the land so conveyed will not be affected thereby. (*Daniher v. Daniher*, 201 Ill. 489, 63 N. E. 239, and cases there cited.) It is also there stated that some courts have held that the purpose to deceive and defraud the other prospective spouse is imputed to the one who makes the attempted transfer and conceals the fact till after the marriage, and that it makes no difference in principle whether actual fraud was intended or not, in support of which is cited *Ward v. Ward*, 63 Ohio St. 125, 57 N. E. 1095, 51 L. R. A. 858, 81 Am. St. Rep. 621, and *Arnegaard v. Arnegaard*, 7 N. D. 475, 75 N. W. 797, 41 L. R. A. 258. But it is also there stated that the better rule is, where any such voluntary conveyance is made without the knowledge of the other of such contracting parties, it presents a *prima facie* case of fraud subject to be explained by the parties interested, and the burden is on the grantee to establish the validity of the deed, in support of which is cited *Fennessey v. Fennessey*, 84 Ky. 519, 2 S. W. 158, 4 Am. St. Rep. 210; *Hamilton v. Smith*, 57 Iowa, 15, 10 N. W. 276, 42 Am. Rep. 39; *Champlin v. Champlin*, 16 R. I. 314, 15 Atl. 85. As stated by the court in the above cases, it is not every such voluntary conveyance that is in fraud of the intended spouse. The wife is not entitled to treat every conveyance made by her husband secretly on the eve of marriage as a fraud on her rights. There may be a good reason for the conveyance. It may be the husband's duty to make it. The general doctrine is that the dower right is subject to every lien or incumbrance at law or

in equity existing before it attaches. It has been frequently
decided that such a conveyance made for the purpose of car-
rying out a previous valid contract is good against the claim
of dower. (*Chapman v. Chapman,* 92 Va. 537, 24 S. E. 225,
53 Am. St. Rep. 823; *Burdine v. Burdine,* 98 Va. 515, 36
S. E. 992, 81 Am. St. Rep. 741; *Champlin v. Champlin,*
supra; *Beckwith v. Beckwith,* 61 Mich. 315, 28 N. W. 116.)
And it was so held, though the contract was oral, where found-
ed on a good consideration of services rendered by a son to a
father and the making of improvements on the strength of a
promise to convey. (*Champlin v. Champlin,* supra.)

H and I were the orchard lands, consisting of twenty-one
acres. They were originally purchased by Robert K. Wilson,
Jr., from one Julius Smith September 21, 1899. The defendants
Robert K., Charles, Peter, and Dave Wilson had agreed among
themselves to buy this land. Robert negotiated all the trans-
actions respecting the purchase. The lands were sold to him
personally by Smith. The deceased did not have anything
to do with, nor was he known in, the transaction. The con-
sideration paid was $400, which was paid by two checks of
$200 each drawn by Peter Wilson, and by him signed, "R. K.
Wilson & Sons," dated September 23 and October 18, 1899.
Of this sum $100 was contributed by Robert K. Wilson, Jr.
The grantee mentioned in the deed executed by Smith was
"R. K. Wilson," without designating whether it was R. K.
Wilson, Sr., or R. K. Wilson, Jr. After the purchase the land
was taken possession of by R. K. Wilson, Jr., and by some of
his brothers. The deceased never was in possession of it, nor
did he claim any interest in it. The defendants Robert K.,
Charles, Peter, and Dave Wilson worked the land and
planted 3,333 fruit trees on it, which were paid for by R.
K. Wilson & Sons. If the grantee named in the Smith con-
veyance was intended to be R. K. Wilson, Jr., and if the de-
ceased had no interest in the land, and laid no claim to it,
undoubtedly it was his duty to make the conveyances H and I,
so that the identity of the grantee might not be left in doubt.
If, on the other hand, the grantee in the Smith conveyance
was intended to be the deceased, then, under the circum-

stances, he only held the legal title in trust, and equity would have compelled him to do just what he did do. That the defendants had sufficient equities in the land to constitute a valuable consideration for a conveyance to them cannot well be doubted. Learning that their father was about to marry the respondent, the defendants very naturally insisted that the conveyances H and I be made to them by their father. Although it be considered that the legal title was in the deceased, yet the facts and circumstances showing that he was a mere trustee for other persons, the widow's right to an interest would not attach to the lands, though no conveyance thereof had been made by the deceased. In order that her interest might attach, the deceased must have had some estate, either legal or equitable, in and to the land during coverture. Though it be considered that he had an estate therein, yet, if he was under an obligation existing prior to the marriage to convey, and did so, the respondent cannot complain, notwithstanding the conveyance was made upon the eve of marriage and in contemplation of it, and without her knowledge.

On plaintiff's appeal the judgment is affirmed. On the defendant's appeal the judgment is reversed, with directions to dismiss the complaint. Neither party is given costs.

McCARTY, C. J., and FRICK, J., concur.