Babcock agt. Babcock *et al.*

## SUPREME COURT.

### JULIA A. BABCOCK agt. JEPTHA W. BABCOCK *et al.*

*Fraudulent conveyance by one, with intent to defraud intended wife of dower —
wife's remedy.*

On the 14th of August, 1873, the plaintiff, who was a widow, and one
Jeptha W. Babcock, a widower, contracted a mutual agreement to
marry. At this time each owned and possessed real and personal
estates of about equal amounts and value. Both had children of former
marriages, of adult age. On the eighteenth of August Jeptha W. con-
veyed by deed certain real estate to his son and daughter. The said
deeds were voluntary on the part of the grantor, no consideration hav-
ing been paid or agreed to be paid therefor by the grantees. On the
twenty-first day of the same August the plaintiff and Jeptha W. did
intermarry, in pursuance of their agreement so to do. The plaintiff at
the time of the marriage had no information that her husband had con-
veyed all his real estate to his children. After the marriage, the plain-
tiff, upon learning that said conveyances had been made, brought this
action for the purpose of having the same set aside:

*Held*, that plaintiff should have judgment declaring said deeds void as to her,
and that she has an inchoate dower right in all said real estate, notwith-
standing said deeds, and a future absolute right of dower therein upon
the event of the death of her husband in her lifetime.

*Held*, further, that the wife is not required to wait before bringing her
action until her inchoate right becomes absolute by the death of her
husband. It is the present injury the plaintiff has sustained, in the
loss of her inchoate right in the lands in question, that entitles her to
maintain her present action.

Where conveyances were made on the eve of the marriage to defraud the
wife of the interest in the land which she would have acquired by the
marriage, a court of equity will entertain her action for the conserva-
tion of the right which she has lost or may loose by the fraudulent acts
of the defendants, and grant her such relief as she may be equitably
entitled to.

*Niagara Special Term, June,* 1876.

On the 14th day of August, 1873, the plaintiff and the defendant Jeptha W. Babcock contracted a mutual engagement to marry; it was understood by both at that time that their contemplated marriage should take place in a few days thereafter. At this time both parties were residents of the city of Lockport, in this state, and each owned and possessed real and personal estates of about equal amounts and value. The plaintiff was at that time a widow, upwards of sixty years of age, and the defendant, Jeptha W. Babcock, a widower sixty-seven years of age; both had children of former marriages, of adult age. The defendant Isaac H. is the son, and Sarah Elizabeth Balliett is the daughter, of the defendant Jeptha W., and his only children. Jeptha W., at the time of his engagement to marry, was seized in fee of a lot upon which was a dwelling-house occupied by him, in Ontario street, and also other real estate on Niagara street, in the city of Lockport. This real estate was worth from $12,000 to $15,000, and it was all the real estate owned by him.

In addition to this, he had personal estate amounting to a few thousand dollars. At the time the marriage agreement was made, the plaintiff had knowledge of what property her intended husband possessed.

On the eighteenth day of the same month, Jeptha W. conveyed by his deed the house and lot on Ontario street to his daughter, the defendant Sarah E., and at the same time he conveyed the Niagara street property to Isaac H., his son, and Sarah E., his daughter, reserving to himself a life estate in all said property. Both said deeds were duly acknowledged and delivered on that day, but were not put upon record until the fourth day of April following. The grantees in said deeds had knowledge, at the time such conveyances were made and accepted, that the grantor and the plaintiff had contracted to marry, and were intending to marry in a short time thereafter. That said deeds were voluntary on the part of the grantor; no consideration having been paid or agreed to be paid therefor by the grantees. That, on the

twenty-first day of the same August, the plaintiff and Jeptha W. did intermarry, in pursuance of their agreement so to do. The plaintiff, at the time of the marriage, had no information that her husband had conveyed all his real estate to his children, and she now brings this action to obtain the judgment of the court, declaring said deeds void as to her, and that she has an inchoate dower right in all said real estate, notwithstanding said deeds, and a future absolute right of dower therein upon the event of the death of her husband in her lifetime.

*L. F. & G. W. Bowen,* for plaintiff.

*Ellsworth, Potter & Brundage,* for defendants.

HENDERSON, *J.* — At the time the plaintiff and her husband contracted to marry, he, the intended husband, was seized of an estate of inheritance in the land which he conveyed to his children a few days thereafter. Had he continued seized until the marriage, the plaintiff would, by virtue of the marriage and the seizin of her husband, have acquired an inchoate right of dower in all of said lands.

It is alleged by the plaintiff that these deeds were executed and delivered on the eve of the contemplated marriage, without consideration, and for the sole purpose, and with the intent on the part of the grantor and the grantees in the deeds, of defeating the plaintiff's dower right in the real estate of the grantor.

That the only object and purpose of the conveyances was to prevent the plaintiff's inchoate dower right attaching to these lands. This I do not understand the defendants to controvert. But the defendants insist: First, that these conveyances were made to carry into effect a mutual understanding had by the plaintiff and the grantor in the deeds, her then intended husband, that the plaintiff should have no part of or interest in his property by reason of the marriage; that the

marriage should not in any way incumber his property; that his children should have all his property at his death, and that the plaintiff's children should have all her property at her decease; and that neither should have any interest in the property of the other by reason of the marriage; and the plaintiff is now in no situation to complain that her intended husband took the precaution, by the execution of these deeds, to have their mutual intentions carried out.

If this position is supported by the evidence, then the plaintiff can have no relief; this mutual agreement, if it existed, would not have operated to deprive the plaintiff of her inchoate dower interest in the land, had the husband remained seized to the time of the marriage; but if his alienation of the land prior to the marriage was with her consent or was a means adopted by the husband of carrying into effect a mutual agreement had with the plaintiff, the plaintiff cannot be said to have been defrauded thereby. In support of this position the husband testifies that during the time the subject of the marriage was being discussed, his property was talked about on several occasions; the last one was at the time when the agreement to marry was finally made; and upon these occasions he says he stated to the plaintiff that he objected to marrying on the ground that he did not want to encumber his property by marriage; that he had property to the amount of about $25,000 and that he wanted it understood that in case they married, his property should go to his children and her property should go to hers; that she replied to these statements, that she had about $20,000 in property, and that it would be very wrong for her to take any of his property away from his children; that she wanted her children to have hers and his children to have his; that this was the purport of their conversation on this subject at the time the agreement to marry was made, and on more than one occasion prior to that time, when the question of marriage was being considered by them.

The plaintiff denies having these conversations or any con-

versations about property, previous to the marriage, except that her husband inquired of her some few days before the agreement to marry, how much she was worth, and she told him she was worth $18,000 or $19,000, and he replied that he had an income from $25,000. I am led to the conclusion, from all the evidence in the case, that there was no understanding that either was to forego any legal rights or claims to the other's property, that might arise by reason of the marriage. The circumstances under which these deeds were executed, the fact of their execution being concealed from the plaintiff and kept secret for some months until trouble arose between them, which resulted in their separation, there being no consultation between the plaintiff and her intended husband as to the time and means of effecting what is now claimed they both intended, with other facts about which there is little dispute, leads me to the conclusion that the husband, in thus disposing of all his real estate, thereby placing himself in a situation to deprive his wife of her dower therein, in case she survived him, was acting contrary to what he then believed was right and just towards his intended wife, and that he did not act in good faith, and that he had no reason to believe that his wife would have assented to these conveyances, had she been aware of their existence, but rather, that he intended, by means of these conveyances, to have it in his power, against her will, to take undue advantage of her if occasion should arise when he should desire to do so.

Second. It is insisted that the statute awards dower to the widow, not to the wife, and that during the life of the husband the wife has no such interest in his lands as the law will protect. All elementary writers, treating of dower, speak of it as an inchoate initiate right, given to the wife by the marriage and seizin of her husband during coverture. The death of the husband does not give this right. Upon the death of the husband, the wife surviving, she becomes entitled to possess that which she acquired by the marriage and seizin of her husband.

This inchoate right of the wife in the lands, of which the husband is seized during coverture, is such a subsisting right as the law protects. In *Simon* agt. *Cunaday* (53 *N. Y.*, 298) it is said by the court that the inchoate right of dower is a valuable right, and will be guarded and preserved to the wife by the judgments of the courts. In *Mills* agt. *Van Voorhies* (20 *N. Y.*, 412, 420) it is said by the court that the inchoate rights of the wife are as much entitled to protection as the vested rights of the widow. Many other cases might be cited holding that this inchoate right is not beyond the protection of the law.

Third. It is further urged by the learned counsel for the defendants that if the plaintiff had a cause of action it accrued upon the execution and delivery of the deeds by Jeptha W., of the lands in question, and insists that the agreement to marry gave her no interest whatever in her intended husband's real estate. That dower is given by the statute and the plaintiff. is entitled to no greater rights than the statute gives her; and the husband not having been seized of an estate of inheritance during the marriage, the wife has acquired no interest, inchoate or otherwise, and she cannot be said to be defrauded of that to which she never had any right or claim whatever.

I think the counsel's argument does not meet the real question presented. The parties not only agreed to marry but they did actually marry, in pursuance of the agreement, and the question now presented is (assuming that the conveyances were made on the eve of the marriage to defraud the wife of the interest in the land which she would have acquired by the marriage), will a court of equity entertain her action for the conservation of the right which she has lost, or may lose, by the fraudulent acts of the defendants, and grant her such relief as she may be equitably entitled to. Had the husband died after the marriage, leaving the plaintiff surviving, the title to the lands remaining in his grantees, could the plaintiff have recovered her dower in these lands in a court of

Babcock agt. Babcock *et al.*

equity? I thing the courts have answered this question in the affirmative.

*Swaine* agt. *Perine* (5 *Johns. Ch. R.*, 482) was a bill in equity for dower. The answer alleged that the husband was not seized during coverture. It appeared in proof that the husband, on the day of the marriage, deeded the premises to his daughter without consideration. The deed was kept secret from his wife. The deed was held by the chancellor to be fraudulent and void as against the plaintiff's claim for dower. In Reeves' Domestic Relations (*page* 103, *n*), it is said: "A conveyance by the husband just before marriage for the mere purpose of defeating dower, does not defeat it" (*Cranson* agt. *Cranson*, 4 *Mich.*, 230).

If the husband aliens the land on the day of the marriage the wife will still be entitled to dower; and if before the marriage, but in contemplation of it, he should make a fraudulent conveyance, whether absolute or in mortgage, for the purpose of defeating the right of dower, it will be no bar to her right (*Greenl. Cruise on Real Prop.*, vol. 1, *page* 172, *and cases there cited*).

By the statutes of Vermont the widow has dower in the lands of which the husband dies seized. In the case of *Thayer* agt. *Thayer* (14 *Vt. R.*, 107) the facts were as follows: The husband, during his last sickness and in expectation of death, conveyed all his real estate to his children by a former marriage. There was no consideration for the conveyance but that of natural love and affection, and it was made to defeat the wife of her dower.

The question was, whether such conveyance operated to defeat the wife of her dower? The chancellor decided that such conveyance was void as against the wife, and set aside the deed. The case was taken to the supreme court and BENNETT, J., in delivering the opinion of the court, held that the wife had, in the lifetime of her husband, such rights as should be recognized, protected and enforced in a court of equity. That the attempt to elude those rights in the man-

ner disclosed was *mala fide* and a fraud upon the law and the marital rights of the wife; that the husband, as far as respects the widow, must be regarded, at the time of his death, as having the seizin of the land in question. When the wife is sought to be divested of an equitable right, it must be done in good faith and without the least appearance of deceit.

In a court of law for dower the court require that the seizin of the husband should be established, and will not look beyond the actual conveyance made by the husband to see whether it was made to defraud the wife of dower in his estate; but equity looks upon the transaction in a different light, and when the rights of purchasers in good faith are not involved holds the fraudulent conveyance as a nullity as to the wife's claim to dower, and would, of course, set it aside upon a proper application ( *Willard's Eq. Jur.*, 696).

From the examination I have been able to make I have no doubt of the plaintiff's right to dower in the lands in question, in the event she survives her husband, the rights of *bona fide* purchasers not intervening.

I am of the opinion that the plaintiff is not required to wait before bringing her action until her inchoate right becomes absolute by the death of her husband. As we have seen, the inchoate dower right is protected by the law.

It is that right of which the plaintiff is sought to be deprived by the acts of the defendants, and this action is brought to maintain and protect that right. There would be no reason nor justice in compelling the plaintiff to wait before bringing her action until the event of her inchoate dower right becoming absolute. In the meantime the rights of *bona fide* purchasers from the fraudulent grantees of the husband may intervene and defeat the action altogether.

It is the present injury the plaintiff has sustained in the loss of her inchoate right in the lands in question that entitles her to maintain her present action. The plaintiff must have judgment for the relief demanded, with costs.