MARTHA H. BECKWITH v. EDWIN W. BECKWITH.

*Ejectment—By widow to recover dower—Subject to existing equities between her husband and his son—Under a contract and deed made prior to the marriage—See head-note for full statement of facts, and conclusions of law therefrom.*

In 1877 defendant's father was the owner in fee of 760 acres of land in Cass county, Michigan, incumbered for $8,000. He also owed *unsecured* debts to the amount of $3,800. In that year defendant, then twenty-seven years of age, moved onto the farm with his family, where he resided and worked the farm, without any contract with his father, until March 10, 1882, receiving no compensation for his services except his living, and during which time, by the application

of the proceeds realized from the farm, he reduced said unsecured debts to $1,000, and paid $3,000 on the mortgage.

March 10, 1882, he entered into a contract with his father, who, in consideration of services rendered and to be performed, executed a deed to him of the undivided one-half of the farm, and deposited the same in escrow, to be delivered on the performance of the contract by defendant. On the same day he made his will, in which he referred to and affirmed the contract and deed, and after bequeathing certain specific legacies, devised the residue of his estate in equal shares to defendant's son and to the testator's wife, if one survived him, he being then a widower. Under the contract defendant was to have the use of the *entire* farm during his father's life-time, and until the aforesaid debts were paid, which he agreed to pay, not exceeding in the aggregate $8,000. All of the live-stock, and grain, growing or harvested, and all farm tools and implements, were to be used by defendant for the purposes of the contract, and he was to pay to his father during his natural life one-half—or so much thereof as he might require—of the net proceeds of said farm and of the live-stock, as soon as converted into money. His father reserved during his life the use of the house where he resided, with garden spot and barn and shed room; and it was expressly provided that in case of his death before said debts were paid, no claim was to be made against defendant on account of the contract by the father's heirs, executors, or administrators, nor should defendant be made to pay them any rent for the father's interest in the farm, or for the use of the personal property left thereon. The time in which said debts were to be paid was made to depend upon the net proceeds which came to defendant's hands from year to year for that purpose. Each party was to pay one-half the taxes and expenses incident to carrying on the farm.

June 4, 1883, defendant's father married plaintiff, at Gloucester, Massachusetts, where they lived continuously until his death, which occurred May 19, 1884, at which time he was seized of the land in question, subject to the rights of defendant under the contract and deed, and owned no property except that mentioned in the contract. On August 10, 1883, the father, by a codicil, changed the sixth provision of his will so as to give plaintiff $5,000 instead of one-half the residue of his estate.

After the execution of the contract defendant entered upon its performance, and faithfully pursued the same, and on May 5, 1885, when plaintiff demanded her dower rights in the land, he had paid the unsecured debts, and reduced the mortgage to $5,500 of principal and $450 interest, and was in *peaceable possession* when plaintiff brought suit to recover such dower.

*Held*, that plaintiff's right to dower in said land was subject to the equities existing between her husband and defendant, under the contract and deed at the time of her marriage, which could not destroy or impair the same.

*Held,* further, that the only effect of the father's death upon the contract, so far as defendant's rights are concerned, was to secure to him the uninterrupted use and enjoyment of the *entire* farm, and the net proceeds thereof, until the debts assumed by him were paid, and such expenses as were necessarily incurred in the faithful performance by him of the contract, subject only to the superior rights of creditors.

Case made from Cass. (Smith, J.) Argued April 28, 1886. Decided May 6, 1886.

Ejectment. Plaintiff brings error. Affirmed. The facts are stated in the opinion and head-note.

*Harsen D. Smith,* for appellant:

Walter G. Beckwith " died seized " of the 760 acres of land, in which plaintiff was entitled to dower. How. Stat. § 5753.

There has been no delivery of the deed to defendant by the depositary, who holds it in escrow; and until such a delivery in conformity with the conditions of holding, no title passes to the grantee: *Taft v. Taft,* 59 Mich. 196; and if such a delivery can be held, by relation, to sustain the deed, it cannot cut off plaintiff's intervening right of dower: *Id.*

Had plaintiff elected to take her legacy under the codicil instead of dower, she would have been placed on the footing of a creditor for a valuable consideration, under the ruling in *Tracy v. Murray,* 44 Mich. 109; and the right of dower is as sacred in law as such a legacy.

[Remainder of brief is confined to an analysis of the contract, as the result of which it is claimed that plaintiff is certainly entitled to her dower in the undivided one-half of the land not deeded to defendant.—REPORTER.]

*Isaac Marston,* for appellant:

How. Stat. § 5735, gives a widow dower out of lands mortgaged by the husband before marriage, as against every person except the mortgagee and those claiming under him; and this statutory provision is sought to be evaded by the contract made with defendant. Under a similar statute it was held, in Massachusetts, that a widow could enforce this right in an action at law against all but the mortgagee and those claiming under him, and as to them the remedy would be in

equity: *Gibson v. Crehore*, 3 Pick. 481; *Snow v. Stevens*, 15 Mass. 278.

How. Stat. § 5738, fully protects the defendant in the amounts he has paid on the mortgage, and this may be done in ejectment: *Snyder v. Snyder*, 6 Mich. 470; *Newton v. Sly*,15 Id. 391; and, according to the policy of our law, plaintiff is entitled to her dower in the present case.

In *Greiner v. Klein*, 28 Mich. 16, 17, it was said that the husband could not deprive the wife of dower, of which she could only be divested by authority of the State or her own voluntary act; and, as shown, *this* authority gives her dower subject to the mortgage, and the husband could not cut off this right by his will made before marriage; why, then, should he be able to do so by a contract which, at the most, charged the estate with the payment of his debts? If so charged by a devise plaintiff could recover dower by contributing her proportion of such charge: Washb. on Real Prop. p. 277; *Clough v. Elliott*, 3 Fost. (N. H.) 182.

*Howell & Carr* and *Howard & Roos*, for defendant:

Non-resident widows are not entitled to dower except in lands of which their husbands died seized: How. Stat. § 5753; *Pratt v. Tefft*, 14 Mich. 191; *Ligare v. Semple*, 32 Id. 438.

Dower attaches to an estate subject to existing equities against the husband's title: 1 Washb. Real Prop. 175 (marg. pag.); *Firestone v. Firestone*, 2 Ohio St. 415; *Madigan v. Walsh*, 22 Wis. 505; *Hugunin v. Cochrane*, 51 Ill. 305; *Selb v. Montague*, 102 Id. 446; *Blood v. Blood*, 23 Pick. 80.

Plaintiff, on the trial, claimed no rights in the half of the land deeded to defendant, and did not dispute our claim that the deed, having been earned by defendant, dated back to its conditional delivery (*Jackson v. Bull*, 1 Johns. Cases, 81; 1 Washb. Real Prop. 207); and she admitted that if the contract operated to transfer the possession of the land to defendant until the debts were paid she could not recover, but insisted that the contract conveyed the possession of her husband's undivided half during his life-time only.

The contract is to be construed so as to gather the intent of the parties from the whole instrument, and harmonize each part with the whole: *Harlow v. L. S. Iron Co.*, 36 Mich. 105; and contemporaneous and connected writings may be used to assist in such construction: *Bronson v. Green*, Walk. Ch. 56; *Norris v. Hill*, 1 Mich. 202; *Dudgeon v. Taggart*, 17 Id. 275.

The contract is insufficient to create a tenancy or a trust, and is not for a term beyond the statutory limit: *Stephens v. Reynolds*, 6 N. Y. 454; and if capable of being made certain it is sufficient: *Gartside v. Outley*, 58 Ill. 211; *McFarlane v. Williams*, 107 Id. 33; *Kabley v. Worcester G. Co.*, 102 Mass. 392.

The period of its duration is sufficiently fixed: *Horner v. Leid*, 23 N. J. 106; *Folts v. Huntley*, 7 Wend. 210; *Hurd v. Cushing*, 7 Pick. 169; *Cook v. Bisbee*, 18 Id. 527; *Hyman v. Kelly*, 1 Nev. 179; *Warner v. Tanner*, 38 Ohio St. 118; *White v. Livingston*, 10 Cush. 259; *Watterson v. Reynolds*, 40 Am. Rep. 672; *Toms v. Williams*, 41 Mich. 552.

The contract may also be considered as creating a trust, in which case defendant would take an estate co-extensive with such trust: *Steevens v. Earles*, 25 Mich. 43; *Toms v. Williams*, 41 Id. 567.

Defendant became obligated by his covenant to pay the mortgage, and the mortgagee could enforce it against him: *Padfield v. Padfield*, 72 Ill. 322; *Gridley v. Gridley*, 24 N. Y. 130; *Unger v. Smith*, 44 Mich. 22; in short, he became a trustee for the mortgagee: *Doolittle v. Jenkins*, 55 Ill. 400; *Nugent v. Riley*, 1 Metc. 117; hence entitled to the possession of the land: *Dutton v. Merritt*, 41 Mich. 537; *Reading v. Waterman*, 46 Id. 107; *Brown v. Combs*, 5 Dutch. 36; for the instrument is sufficient in substance and form to create a trust estate for the benefit of the mortgagee: *Powers v. Powers*, 28 Wis. 659; *Cooper v. Whitney*, 3 Hill, 95; *Gilman v. Reddington*, 24 N. Y. 9; *Maverick v. Lovejoy*, 6 Allen, 183; *Doolittle v. Jenkins*, 55 Ill. 400; *Padfield v. Padfield*, 72 Id. 322.

SHERWOOD, J.   This is an action of ejectment, brought by the plaintiff, Martha H. Beckwith, to recover dower in a farm of 760 acres of land owned by her husband, Walter G. Beckwith, in his life-time, situated in the county of Cass.

The cause was tried before Judge Smith, without a jury, and upon the facts found the court held that the plaintiff was not entitled to recover.   The case now comes before us on a case made after judgment, containing the findings of fact and of law.

The error assigned is that the facts found do not support the conclusion of law, and that the plaintiff should have

had judgment. The facts found are, in substance, as follows:

1. That Walter G. Beckwith was the husband of the plaintiff at the time of his death, which occurred on the nineteenth day of May, 1884, at Gloucester, Massachusetts; that the plaintiff was married to him, June 4, 1883, and was his second wife; that he had no acquaintance with her prior to the fall of 1882; and that they lived in Gloucester until his death, the plaintiff never having been in this State.

2. That the defendant, Edwin W. Beckwith, is a son of Walter, and now 37 years of age.

3. That Walter, on March 10, 1882, owned the lands described in the declaration *in fee*, which were mortgaged, and had been for some years, to the amount of $8,000, and he also owed unsecured debts to the amount of $1,000; that at the time of his death he was seized in fee of said lands, except in so far as his title was limited by a contract made with his son, and the deed mentioned therein, both of which were made and executed on the tenth day of March, 1882. The contract will be found in the margin.[1]

---

[1] "Agreement made this tenth day of March, A. D. 1882, between Walter G. Beckwith and Edwin W. Beckwith, both of Jefferson township, Cass county, and State of Michigan:

"1. In consideration of valuable services rendered me by Edwin W. Beckwith, and in further consideration of the agreements of the said Edwin hereinafter set forth, I, Walter G. Beckwith, do hereby sell, and agree to deed to him within thirty days from date, the undivided one-half of my farm, consisting of 760 acres of land, be the same more or less, situated in the townships of Jefferson and La Grange, in the county of Cass, and State of Michigan; which deed shall be placed in the hands of George B. Turner, and shall be delivered by him to Edwin when the terms of this agreement are complied with, or sooner if I shall so order.

"2. Said Edwin shall pay off the mortgage on said farm, and other indebtedness of mine (now existing) and not in the aggregate exceeding eight thousand dollars.

"3. During the term of my natural life he shall pay me one-half of the net proceeds of said farm, including one-half of the net proceeds of all the live-stock now on the farm of every name, kind, and nature, so soon as the same is converted into money, or he shall pay me so much thereof as I may require from time to time, not exceeding one-half.

"4. He shall keep a correct account of all the receipts and expenditures of or concerning said farm, and shall exhibit the same to me or my agent whenever he or I shall so require.

"5. Edwin shall have during my life-time, and so long as my debts remain unpaid, the entire use of said farm (my half as well as his own), always provided he shall conduct and carry on said farm economically, and in a good and farmer-like manner.

"6. All of the live-stock now on said farm, to wit, horses, cattle, sheep, and hogs, together with the grain now growing on the farm, and in barns or granaries, also the farm tools and implements thereon, I

4. That in 1877, besides the mortgage mentioned, Walter owed the sum of $3,800. That year Edwin, with his family, moved on the farm, and resided there, working the farm, without any contract with his father, until the tenth day of March, 1882, receiving no compensation except his living; using the proceeds of the farm to pay Walter's indebtedness, which was reduced during that period $3,000 on the mortgage, and the other indebtedness to $1,000, when said contract was entered into between them, and said deed made.

---

hereby agree to leave on the farm, to be had, used, and disposed of by Edwin for the purpose of carrying on said farm, and paying my indebtedness as aforesaid; but with the express understanding that whenever he shall fail to conduct the farm economically, and in a good farmer-like manner, then I shall be at liberty to resume control of all or or any of said personal property then on the farm, and of my half of said farm, upon giving Edwin thirty days'·notice of my intention so to do.

" 7.  In case of my decease before all of my debts hereinbefore referred to are paid, none of my heirs, executors, or administrators shall bring or make any claim against Edwin in consequence of, or growing out of, this contract or agreement; nor shall Edwin be obliged or made to pay them, or any of them, any rental for my share or part of said farm, or for the use of any of the personal property hereinbefore mentioned.

" 8.· During my life I hereby reserve the use and occupation of the dwelling where I now reside on said farm, together with barn and shed room such as I may require, and sufficient garden room.

" 9.  In consideration of the agreements of the said Walter G. Beck-with, above mentioned and set out, I, Edwin W. Beckwith, agree to the same, and do hereby accept said deed on the terms and conditions, restrictions and limitations, hereinbefore stated and written out;·and I also hereby agree to pay all debts and liabilities of said Walter G. Beckwith now existing, not to exceed in the aggregate eight thousand dollars, and to do and perform all the obligations imposed upon me by the said Walter G. Beckwith as hereinbefore written out, on the condition that the time limited for the payment of said indebtedness shall depend upon the condition of crops from year to year; in other words, upon the net proceeds of the farm from year to year which may come into my hands for that purpose;

" 10.  Each party hereto shall pay one-half of the entire taxes of the farm and its belongings, and each shall pay one-half of all the expenses incident to carrying on said farm.

" 11.  It is hereby mutually agreed that, on the first day of January of each year, so much of the undivided net proceeds of the farm as may be due Walter G. Beckwith for the last preceding year, and not asked for or demanded by him, shall be applied by Edwin to the payment of indebtedness against the farm, and farm expenses, and no sum or sums thus had or used by Edwin shall ever be accounted for by him, either to Walter G. Beckwith, or his heirs, executors, or administrators.

" In witness whereof, the parties hereto have set their hands and seals the tenth day of March, A. D. 1882.

[Signed]                                    " E. W. BECKWITH.   [L. S.]
                                            " W. G. BECKWITH.   [L. S.]
" In presence of
       " G. B. TURNER.
       " M. L. HOWELL."

5. On the day the contract was made Walter made his will, a copy of which will be found in the margin;[1] and on the tenth day of August, 1883, he made a codicil, changing the sixth clause of his will so as to read as follows :

"All of the rest, residue, and remainder of my estate, real, personal, or mixed, whether in the State of Michigan or elsewhere, I will and dispose of as follows: To my wife, Martha H. Beckwith, I give, devise, and bequeath the sum of five thousand dollars ($5,000); and should there be any residue after paying said five thousand dollars to my wife, I desire that said residue be divided equally among my grandchildren, to-wit, Walter G. Beckwith (son of Edwin), Fred. and Blanche Beckwith, children of my son Frank, share and share alike, as near as may be."

The will was subsequently probated, but Edwin declined to act as executor. The deed mentioned in the contract and in the will is a warranty deed, duly executed by Walter G. Beckwith to Edwin, for the consideration stated at the sum of $10,000, Edwin agreeing to pay the mortgage, and covers

---

[1] " Last will and testament of Walter G. Beckwith, of Jefferson township, Cass county, and State of Michigan: I, Walter G. Beckwith, considering the uncertainty of this mortal life, and being of sound mind and memory, do make and publish this, my last will and testament, in manner and form following; that is to say:

"*First.* After my decease, and as soon as practicable, I desire all debts of every kind, name, and nature owing by me, paid and discharged.

" *Second.* Having, by a warranty deed, conveyed to my son Edwin the undivided one-half of my farm in Jefferson township, Cass county, Michigan, on the tenth day of March, A. D. 1882, and on the same day made an agreement in writing with him, giving him the use and possession of all my personal property on said farm for the purposes in said agreement indicated, now this is to confirm and ratify said deed and agreement; and I do hereby confirm and ratify said deed and agreement, liberally construing all their provisions in his behalf.

" *Third.* I hereby give, devise, and bequeath to Fred. Beckwith, my grandson, *ten thousand* dollars, to be paid by my executor when he shall have reached the age of twenty-one years.

" *Fourth.* I hereby give, devise, and bequeath to my granddaughter, Blanche Beckwith, *five thousand* dollars, to be paid her by my executor when she shall have reached the age of twenty-one years.

" *Fifth.* I hereby authorize my executor to make such advancements from time to time as he may deem best to further the true interests of my said grandchildren.

" *Sixth.* All of the rest, residue, and remainder of my estate, real, personal, or mixed, whether in the State of Michigan or elsewhere, I wish divided equally between Walter G. Beckwith, my grandson (and son of Edwin), and my wife, should I have one to survive me, share and share alike, as near as may be.

" *Seventh.* I hereby appoint my son Edwin W. Beckwith sole executor of this, my last will and testament, hereby revoking all other wills by me made.

" In witness whereof I have hereunto set my hand and seal this twenty-fourth day of May, A. D. 1882.          W. G. BECKWITH." [L. S.]

an undivided half of the 760 acres mentioned in the declaration.

6. Upon the execution of the contract, Edwin, then being in possession of the property, immediately commenced its performance on his part, and still continues so to do; and between that date and the fifth day of May, 1885, he made improvements of a permanent character, the cost whereof is as follows: Wind-mill and pump, $180; built a wood-house at an expense of $150; rebuilt a barn for $250; and did fencing to the amount of $100. He also paid off the unsecured indebtedness of Walter G. Beckwith, $1,000, and upon the mortgage $2,500 of the principal, leaving due at the latter date $5,500 on the mortgage of principal, and $450 interest.

7. That "the defendant was in the actual possession and occupation of all the lands described in the declaration when this suit was commenced; and on the fifth day of May, 1885, the plaintiff demanded to be let into possession and enjoyment of her dower interest" in the said farm, and the defendant denied her right to dower, and refused to accede to her demand of possession.

8. That the land is about one-third under timber, and over half of the farm is under cultivation; and that the defendant has carried on the farming economically, and in a good farmer-like manner.

9. That at the date of said contract and deed, and at the time Walter G. Beckwith died, all the property owned by him was the property mentioned in the contract.

We think the judgment in this case is right, and should be affirmed.

It is the contention of counsel for the plaintiff that, upon the death of her husband, she became entitled to dower in the whole farm, subject, at most, to have her dower defeated as to the undivided half by the lawful delivery of the deed deposited with Turner; but whatever may be the plaintiff's right as to dower in the half described in the deed, she cannot be deprived of it in the other half by reason of the contract between Edwin and his father.

We are not able to agree with the learned counsel for the plaintiff in these positions, but do fully agree with him as to the object the father had in conveying the half he did to his son, and in making the contract with him, viz.:

1. To make liberal provision for Edwin.

2. To provide for the liquidation of his indebtedness from the proceeds of the farm.

3. To provide ample means for his own use and support during the continuance of the contract.

4. To relieve himself for a few years from the care and management of the farm.

—And we think the arrangement made was well calculated to accomplish the object so desirable to the father in his old age.

The young man, in his management of the farm during the previous five years, had given evidence of rare business qualifications, and energy and capacity equal to the undertaking, —such as evidently satisfied the father that he could safely place his property under the son's exclusive control until the last dollar of his indebtedness should be paid, and in the meantime be provided with a good home and abundant means for his support.

The findings fully disclose that Edwin faithfully performed the trust reposed in him, and discharged his duty in the premises in such manner as to meet the entire approbation of his father as long as he lived.

By the terms of the will it will be noticed that at the date of the contract and deed the fact that the testator might again marry was in his mind; and in the sixth clause thereof he provides, in case such event should occur, what share of the property he desired his wife to receive after his death; and after such marriage did occur he changed this clause of his will, by codicil, and specifically stated that he wished his wife to have $5,000, instead of giving her a share of his land, thus avoiding, or intending to avoid, any use to be made by her of his farm. And it will further be noticed that in the second clause of the will the testator makes special mention of the deed made to Edwin, and of the contract he had made with him, and confirms both, and requests that all the provisions in each may be construed favorably in favor of Edwin.

The intention of parties to a contract, when stated in so plain and solemn a manner, can never be departed from when

being construed by courts. Should we give the contract the construction claimed by counsel for the plaintiff, it would deprive Edwin of a very large portion of the benefit intended for him thereunder, and which may well be considered necessary to carry out the principal object had in view by both parties in making the same, viz., the payment of Walter G. Beckwith's indebtedness, and then secure the largest amount possible for distribution to the legatees in the will. For this purpose it was very necessary that Edwin should have the proceeds of the use of the entire farm, and whether it should require a longer or shorter period than the life-time of the testator, it was fully provided for and secured under the contract, and was evidently understood and contemplated by both parties that the time might extend beyond the life of the father. These facts are apparent from the fifth, sixth, and seventh clauses of the contract.

The deed could not be delivered before the debts owing by Walter G. Beckwith were paid; and it is not probable that a period of less than seven or eight years could have been anticipated by the parties for this purpose.

The father was unmarried at the time the contract was made, and the property was not then subject to any contingent right of dower, and there can be no good reason why the arrangement made between Edwin and his father should not be fully carried out according to the intention of the parties, in the spirit in which it was made.

It is claimed on the part of counsel for plaintiff that the reservation of one-half the net proceeds of the farm by Walter to himself, with the right to draw therefrom so much thereof as he pleased, is a strong indication that Edwin should not control or have the benefit of the use of that half of the property not conveyed to him in the deed; that the moneys he was required to pay should come from the proceeds of that part of the farm covered by the deed.

It will be noticed, however, by a careful examination of the contract, that it was the use of the *entire* farm, or rather the proceeds thereof, that the father intended to secure to the son, to be used for the payment of the debts, subject to

the amount he might require for his own support from the half of the farm retained by him so long as he might live; and he also retained, or rather reserved, the right to the use and occupancy of the buildings and a garden, if he wished to use them, for the same purpose and for the same period. It will be further noticed that the proceeds of his part of the farm, after deducting expenses, were to be paid to him only as he called for them, and so much as he did not require were to be applied by Edwin to the payment of the debts, and the reservations only continued during the father's life-time, when the whole net proceeds were to be so applied until the debts were paid.

And it was further expressly agreed between them that Edwin should never be held to account for such net proceeds, when thus received and applied by him, to the father while living, or to his heirs after his death, in any other way or manner, and that the contract is to continue for the use of the whole farm so long as may be necessary to obtain the money therefrom sufficient to liquidate the entire indebtedness, the payment of which is assumed by Edwin under the contract.

The only effect the death of Walter can have upon the contract, so far as the rights of Edwin are concerned, is to secure to him the uninterrupted use and enjoyment, by any one, of the entire farm, and the net proceeds thereof, until he shall have paid the debts assumed by him, and such expenses as are absolutely incurred by him in necessary repairs to the buildings and fences in conducting the farming business "economically, and in a good farmer-like manner," during that time ; and the rights of all persons who are not creditors to any of the proceeds of said farm, or to the possession thereof, are postponed until Edwin, in fulfilling his part of the contract in pursuance of its terms, shall have paid said debts; when the widow and heirs will be entitled to the use and enjoyment of the interests secured to them under the provisions of the will, and at which time Edwin will be entitled to his deed, and to have it recorded.

Any other construction of the contract, we think, would

be a clear violation of the terms of that instrument, and do great injustice to Edwin, whose management of the farm seems to have secured, not only the approbation of his father while living, but all the rest of the parties interested since his death, except the plaintiff.

The plaintiff's right to dower in this case was subject to the equities existing between her husband and Edwin, relating to the husband's land, at the time of the marriage. The marriage could not have the effect to destroy, or in any manner impair, the rights of Edwin obtained from his father in the farm, but whatever right or interest she has therein by reason of her marriage and the death of her husband, involving the use of the property, must be subject to the equities of Edwin therein.

The papers in this case securing the rights of the parties interested were carefully drawn, and well calculated to secure the objects intended, and should be carried out under the construction herein given to the contract, which will preserve the rights of all the parties.

The judgment of Judge Smith must be affirmed, with costs.

The other Justices concurred.