## JENNIE DANIHER

*v.*

## ANN DANIHER *et al.*

*Opinion filed February 18, 1903.*

1. MARRIAGE—*effect of conveyance of land just before marriage.* A voluntary conveyance of land by either party to an intended marriage without the knowledge of the other and shortly before the marriage is *prima facie* a fraud upon the dower rights of such other, and the burden is upon the grantee to establish its validity.

2. SAME—*reasonable conveyance to provide for children is not fraudulent.* A conveyance just previous to the grantor's marriage is not fraudulent as to the rights of the intended wife, although made without her knowledge, if the advancement is shown to be reasonable and was intended as a provision for the grantor's children.

3. SAME—*a conveyance to carry out a valid contract is good as against dower.* A conveyance made for the purpose of carrying out a previous valid contract is good as against the dower right of grantor's intended wife, although made without her knowledge.

4. SAME—*when deed to grantor's son is valid as against dower of intended wife.* A deed to the grantor's son is valid, as against a claim of dower by the grantor's wife, where the deed was recorded ten days before the grantor's marriage, and was made in pursuance of a parol promise to the son, who had worked the farm for many years without pay, and who assumed, as consideration for the conveyance, the payment of certain debts and annuities.

Appeal from the County Court of Grundy county; the Hon. A. R. Jordan, Judge, presiding.

J. L. O'Donnell, for appellant:

A conveyance by a husband with intent to defeat dower is valid if made by a real as distinguished from a colorable sale and conveyance. Perry on Trusts, sec. 213; *Firestone* v. *Firestone,* 2 Ohio St. 415; *Flowers* v. *Flowers,* 18 L. R. A. (Ga.) 75.

A conveyance made upon a valuable consideration, during the engagement to marry, will defeat the dower of the wife. Perry on Trusts, sec. 213.

A bond given by a woman just before her marriage, for a valuable consideration, though concealed from the husband, is not a fraud on his marital rights. *Blanchett* v. *Foster,* 2 Ves. Sr. 264.

The conveyance to a son before the marriage of the owner, based partly on a valuable and partly on a good consideration, will, where the son takes, bar dower. *Firestone* v. *Firestone,* 2 Ohio St. 415.

Where the owner, prior to his engagement to marry, enters into an arrangement with a son or other party, and thereby gives him an equity in the premises, the dower of the wife, whom the grantor subsequently marries, being derived from the husband, is subject to such equity. *Chesnut* v. *Chesnut,* 15 Ill. App. 442; 1 Scribner on Dower, chap. 28, sec. 13; 4 Kent's Com. 50; 1 Washburn on Real Prop. 163; *Burdine* v. *Burdine,* 81 Am. St. Rep. 741; *Champlin* v. *Champlin,* 16 R. I. 314.

Where the grantor is bound in good faith, though not legally bound, to execute a conveyance to his son of the premises in question, and does so before marriage, such conveyance will bar dower. *Coldham* v. *Sale,* 1 B. Mon. 76.

The deed in question being an executed trust for the benefit of all the creditors of John Daniher, cannot be rescinded without their consent. *Snell* v. *Ives,* 85 Ill. 279; *Lithographing Co.* v. *Kerting,* 107 id. 244.

J. W. RAUSCH, for appellee Ann Daniher:

The deed sought to be set aside was made by a man on the eve of marriage, unknown to the intended wife, with the express purpose of defeating her inchoate right of dower which she would acquire in his estate, and it is fraudulent and void as to her. Wait on Fraudulent Conveyances, sec. 314; 1 Perry on Trusts, sec. 213; Bispham's Principles of Eq. secs. 253-255; Story's Eq. Jur. (13th ed.) sec. 273, and notes; *Smith* v. *Smith*, 6 N. J. Eq. 522.

This conveyance was fraudulently entered into by the intended husband in contemplation of his future marriage, and was concealed from the intended wife with full knowledge on the part of the grantee, and is void as against the wife. 1 Story's Eq. Jur. (13th ed.) sec. 273, note *a; Blanchett* v. *Foster*, 2 Ves. Sr. 264; *Freeman* v. *Hartman*, 45 Ill. 57; *Gregory* v. *Winston*, 23 Gratt. 102; Rodgers on Domestic Relations, sec. 416; Bispham's Principles of Eq. sec. 253, pars. 3, 4.

It is as much a fraud for a man to place his property out of his hands for the purpose of avoiding the right of dower which is about to attach to it, as it is for a debtor who contemplates the contraction of debts to voluntarily dispose of his property in order to defeat the efforts of future creditors to secure their payment. *Fair* v. *Fair*, 14 Vt. 107; *Young* v. *Carter*, 10 Hun, 199; Wait on Fraudulent Conveyances, secs. 70, 101; *Beeckman* v. *Montgomery*, 14 N. J. Eq. 112.

Even where the consideration is valuable, if it is done with a fraudulent intent and the grantee participates in the fraud the deed can be avoided by creditors. Tiedeman on Real Prop. sec. 802, note 1.

A voluntary conveyance by either party to a marriage contract of his or her entire property, the conveyance being made without the knowledge of the other and just prior to marriage, is a fraud upon marital right. *Leach* v. *Duval*, 8 Bush, 201; *Butler* v. *Butler*, 21 Kan. 521; *Smith* v. *Smith*, 6 N. J. Eq. 515.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a decree of the county court of Grundy county awarding dower to appellee Ann Daniher, widow of John Daniher, Sr., deceased, and appointing commissioners to set off the same, in a proceeding to sell real estate of David F. Daniher, deceased, to pay debts.

John Daniher, the father of David, was engaged to and had obtained a license to marry Ann Kerns, a widow, now the appellee Ann Daniher, and on September 29, 1896, about two weeks before their marriage, he conveyed by warranty deed the land in question, two hundred and forty acres in Grundy county, to his said son David, who was already in possession of the same. David F. Daniher died November 5, 1900, testate, leaving the appellant, Jennie Daniher, his widow, but no children. By his will he devised a life estate to his wife, remainder to the children of his brothers, John and William. His widow renounced under the will, and thus became the owner of an undivided one-half of the real estate and the children of John and William Daniher, of the other half. John Daniher, Sr., the father, died intestate February 8, 1901, leaving Ann Daniher, his widow, who now insists that the deed to David was made in fraud of her marital rights, and claims dower in the land conveyed by her husband to his son David. This deed conveyed to David F. Daniher the south-east quarter and the west half of the south-west quarter of section 10, township 31, range 6, east of the third principal meridian, in Grundy county, for the following consideration, viz.: That the grantee pay all the debts then owing by the grantor, estimated at about $2000; also an annuity of $300 to the grantor during his lifetime, payable semi-annually; also an annuity of $300 to Edward Daniher during his lifetime, payable semi-annually; and also a mortgage of $1000 on the west half of the south-west quarter above described. Four days before his marriage John Daniher, Sr., conveyed to his intended wife a house and several lots in the village of

Kinsman, for an expressed consideration of $700. David paid off $2554 of his father's debts, kept the interest on the mortgage paid up and paid the two annuities secured by the deed. After his death his widow filed her petition to sell real estate to pay debts, alleging that the outstanding debts amounted to at least $6000 over personal assets. It is conceded that a large share of this deficiency is made up of the debts of John Daniher, Sr., that David was charged with paying by the terms of the deed. Ann Daniher answered the petition and filed her cross-petition, charging that the deed to David was in fraud of her marital rights, and claiming dower in the lands therein conveyed. Jennie Daniher answered the cross-petition, denying its allegations, and stating, among other things, that David was in possession of the land for three years before the marriage of appellee Ann Daniher, under a promise from his father to convey the premises to him, and that he made lasting and permanent improvements upon the same in reliance upon such promise. The court found the material allegations of the petition and of the cross-petition to be true, and endowed Ann Daniher with one equal third part of the land, subject to the sum of $2554 debts paid by David, and to the annuity of $300 to Edward Daniher, and to the mortgage of $1000, and appointed commissioners to assign the dower and make report, reserving the sale for a further order.

The weight of authority is, that a voluntary conveyance by either party to a marriage contract, of his or her real property, made without the knowledge of the other and on the eve of the marriage, is a fraud upon the marital rights of such other, and such conveyance will be treated as fraudulent and void as against the party surprised, and his or her marital rights in the land so conveyed will not be affected thereby. (1 Scribner on Dower, chap. 28, sec. 10; Perry on Trusts, sec. 213; *Smith* v. *Smith*, 2 Halst. Ch. 515; *Swaine* v. *Perine*, 5 Johns. Ch. 482; *Chandler* v. *Hollingsworth*, 3 Del. Ch. 99; *Babcock* v.

*Babcock,* 53 How. Pr. 97; *Pomeroy* v. *Pomeroy,* 54 id. 228; *Youngs* v. *Carter,* 10 Hun, 194; *Petty* v. *Petty,* 4 B. Mon. 215; *Leach* v. *Duvall,* 8 Bush, 201; *Littleton* v. *Littleton,* 1 Dev. & B. 327; *Cranson* v. *Cranson,* 4 Mich. 230; *Brown* v. *Bronson,* 35 id. 415; *Jones* v. *Jones,* 64 Wis. 301; *Thayer* v. *Thayer,* 14 Vt. 107; *Ward* v. *Ward,* 63 Ohio St. 125; *Butler* v. *Butler,* 21 Kan. 521; *Freeman* v. *Hartman,* 45 Ill. 57; *Clark* v. *Clark,* 183 id. 448.) And some courts have held that the purpose to deceive and defraud the other prospective spouse is imputed to the one who makes the attempted transfer and conceals the fact till after marriage, and that it makes no difference, in principle, whether actual fraud was intended or not. (*Ward* v. *Ward,* 63 Ohio St. 125; *Arnegaard* v. *Arnegaard,* 7 N. Dak. 475.) But we think the better rule is, that where any such voluntary conveyance is made without the knowledge of the other of such contracting parties it presents a *prima facie* case of fraud, subject to be explained by the parties interested, and the burden is on the grantee to establish the validity of the deed. *Fennessey* v. *Fennessey,* 84 Ky. 519; *Hamilton* v. *Smith,* 57 Iowa, 15; *Champlin* v. *Champlin,* 16 R. I. 314.

Not every such voluntary conveyance is in fraud of the rights of the intended spouse. Where the intention is to provide for the children, and not to defraud the wife or husband, and the advancement is reasonable, when considered with reference to the property of the grantor, it will not be held fraudulent. *Fennessey* v. *Fennessey, supra; Baker* v. *Chase,* 6 Hill, 482; *McIntosh* v. *Ladd,* 1 Humph. 459; *Richards* v. *Richards,* 11 id. 429; *Miller* v. *Wilson,* 15 Ohio, 108; *Littleton* v. *Littleton, supra; Gaines* v. *Gaines,* 9 B. Mon. 295; *Clark* v. *Clark, supra.*

A conveyance upon the eve of marriage, to be regarded as a fraud upon the legal rights of the intended wife, must be made without her consent or knowledge. (*McClure* v. *Miller,* 1 Bailey's Eq. 107; *Leach* v. *Duvall, supra; Clark* v. *Clark, supra.*) The rule, however, is not absolute. It does not entitle the wife to treat every con-

veyance made by her husband secretly on the eve of marriage as a fraud on her rights. There may be a good reason for the conveyance. It may be the husband's duty to make it. The general doctrine is, that the dower right is subject to every lien or encumbrance, at law or in equity, existing before it attaches. (1 Scribner on Dower, chap. 28, sec. 15.) It has been frequently decided that such a conveyance, made for the purpose of carrying out a previous valid contract, is good against a claim of dower. *Chapman* v. *Chapman*, 92 Va. 537; *Burdine* v. *Burdine*, 98 id. 515; *Champlin* v. *Champlin*, 16 R. I. 314; *Firestone* v. *Firestone*, 2 Ohio St. 415; *Oldham* v. *Sale*, 1 B. Mon. 76; *Beckwith* v. *Beckwith*, 61 Mich. 315.

It is shown by the evidence in the case at bar, that John Daniher, Sr., had, as the issue of his first marriage, four sons, William, David, Edward and John, and one daughter, Margaret Donovan. His son William had gone into business and failed, and the father had become responsible for his debts. The debts charged on the land by the deed to David were chiefly the debts incurred by the father on account of William's failure. The father had paid out large sums on his account, David had paid $2554, and a large amount of these claims had been filed against David's estate. Edward was an imbecile, and the annuity of $300 in the deed, and charged on the land, is for his support. What provision the father had made for his son John does not appear in the record, although it is stated by one of the counsel that he had given him a farm. At any rate, John is not contesting the validity of the deed, and it seems that David gave him his note for $1000 after receiving the deed from his father. Two weeks before his second marriage (the marriage with appellee) the father conveyed eighty acres to his daughter, only reserving an annuity of $100. This conveyance is not in controversy here. On the same day, he conveyed the land in question in this suit to his son David, subject to the charges already specified,—that is, subject to his

debts, which he estimated would not exceed $2000, but on which David had paid, before his death, the amount of $2554, leaving a large amount still unpaid, and which has been filed and allowed against David's estate; and subject also to the two annuities, of $300 each, to John Daniher, Sr., and Edward Daniher, for their respective lives, and to a mortgage of $1000 on eighty acres of the land. The payment of these charges was made the consideration for the deed, and the court so found. The court also found that part of the consideration was work and services rendered by David to his father before the execution of the deed. Three witnesses testified that David had always worked on his father's farm from boyhood, and after he came of age; that he received no wages, and that the father had said that he was going to give him that farm,—that everything there would be David's. A few days after David's marriage to appellant, which occurred in May, 1895, his father and mother left the farm and turned it over to him and moved to the village of Kinsman. The father said that David could have his deed at any time. The son planted fruit trees, built a corn-crib and tool-shed, a kitchen, and a lot of fence. David's mother died in December, 1895. When David and John learned of their father's contemplated second marriage, they, together with several old friends of the family, had a consultation with their father in the village of Kinsman in reference to the making of the deed in controversy, and advised him to convey the land before his marriage. When the conveyance was made the grantor was seventy-six years old and somewhat weak from age and his intemperate habits, and there was some evidence that at the time he was to some extent intoxicated, but it appears that he was always more or less under the influence of liquor, and it does not appear that he did not fully understand the effect of his act, or that the deed was obtained by any undue influence. A few days previously he had made his will, disinheriting his

son William. There was no direct testimony as to the knowledge of appellee Ann Daniher in regard to these transactions; at any rate, her knowledge of them is not clearly established, but the deed was put on record ten days before the marriage, and there is other evidence from her admissions that she had heard he had made the conveyance. It is evident that the deed was made for the purpose of carrying out the oft-expressed intention of the father to convey the land to his son David, and also to avoid encumbering it with his second wife's inchoate right of dower. But in view of all the evidence, including that of the conveyance to her, before the marriage, of the house and lots, we cannot reach the conclusion that the conveyance of the land was in fraud of the appellee's inchoate right of dower.

In *Champlin.* v. *Champlin*, *supra*, the son had worked on his father's farm for twenty years,—ever since he was fourteen years old,—receiving nothing but his board, lodging and clothing. The father had always told him that the farm should be his. After his mother's death the father told him he could have the farm,—to take possession of it and he would give him a deed. The son took possession and made changes and permanent improvements. The father made the deed, without the knowledge of his intended wife, a few hours before their marriage, reserving a life estate. The court held that the making of the deed was proper and not fraudulent as to the wife, and that it barred dower.

In *Beckwith* v. *Beckwith*, *supra*, the son had worked for five years on his father's farm, receiving no compensation but his living. Then the father and son entered into a written contract, by which the father agreed to convey the undivided one-half of seven hundred and sixty acres to the son, on condition that the son pay off an indebtedness of $8000, partly secured on the land, the son to have the use of the whole farm, and to pay one-half of the net proceeds to the father for life, if so required

201—33

by the father, the balance to go to paying off the indebtedness. The father executed the deed and placed it in escrow, to await the fulfillment of the conditions. Shortly after, he married again. By his will he confirmed the contract and deed and bequeathed $5000 to his wife. It was held that the widow had no dower in the son's half, and that her dower in the other half was postponed until the debts secured by the contract were paid.

In *Firestone* v. *Firestone, supra,* the husband, before marriage, for a consideration partly good and partly valuable, agreed to convey certain lands to his son, who paid the valuable consideration ($240) and took possession, and after marriage a conveyance was actually made. The land was worth $2240. It was held that no right of dower attached as against the equity of the son.

We think the evidence sufficiently showed that the father was under obligation to convey this land to his son David. Aside from the consideration of compensation for years of unpaid toil, there was the further consideration of the debts and annuities that the son assumed, with an outstanding annuity to the son Edward, of uncertain duration. David was in possession of the farm. His deed was on record, and other provision was made for appellee Ann Daniher. We cannot hold that the deed was made in fraud of the marital rights of the second wife.

In the view we take of the case it is not necessary to consider the questions raised as to the competency of certain of the witnesses who testified before the county court.

The order and decree will be reversed and the cause remanded, with directions to dismiss appellee's cross-petition, and for further proceedings on appellant's petition to sell the land to pay debts.

*Reversed and remanded, with directions.*